

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA<br>Plaintiff, | § § § | |
| v. | § § | |
| $229,590.00 in United States Currency<br>Seized from a Safe in the Home of<br>Dallas County Commissioner<br>John Wiley Price | § § § § | Civil No. 3:12-CV-893-D |
| Defendant *In Rem.* | § § | |

## *AMENDED* MOTION TO FILE AND MAINTAIN ACTION UNDER SEAL

Pursuant to Federal Rule of Civil Procedure 5.2(d), the United States of America

(United States) respectfully requests that this Court consider the attached Order which

would seal this matter, all filings, all supporting materials, and all proceedings until May

30, 2012. The United States submits that the facts in this case can justify sealing this

matter for a limited duration and would summarize the surrounding circumstances as

follows:

1.      On June 27, 2011, Special Agents of the Federal Bureau of Investigation

(FBI) executed a search warrant at 510 East 5th Street in Dallas Texas and seized

$229,590.00 in United States currency from a safe in the home of Dallas County

Commissioner John Wiley Price ("Defendant property"[1]).

---

[1] As the Court is aware, the defendant in a civil asset forfeiture is the seized property and not any potential owner of the property.

*Amended* **Motion to File and Maintain Case Under Seal - Page 1**

2.     Pursuant to law, the FBI instituted non-judicial administrative forfeiture proceedings against the Defendant property, published notice of the proceedings in the *Wall Street Journal*, and sent direct notice to John Wiley Price and Dapheny Fain as people who might wish to assert an interest in the property in order to stop the administrative proceedings.

3.     On September 27, 2011 and September 28, 2011 respectively, John Wiley Price and Dapheny Fain filed claims to the Defendant property. The FBI then ended all administrative forfeiture proceedings and forwarded this matter to the United States Attorney's Office for judicial forfeiture proceedings. The United States then had 90 days in which to file a complaint for forfeiture unless a District court extended the time for filing.

4.     With the consent of Price and Fain's attorneys and pursuant to 18 U.S.C. § 983(a)(3)(A), the Hon. David C. Godbey extended the filing deadline an additional 90 days from December 26, 2011 to March 26, 2011.

5.     The purpose of the extension was to give the United States time to scan documents seized from Price and Fain so that digital copies could be provided to their attorneys for use in responding to an asset forfeiture complaint within statutory timeframes. Before the attorneys for Price and Fain agreed to the extension, the United States made it clear that it could not even give an estimate of when the scanning would be finished due to the volume of documents seized. Consequently, the United States believed it was clear that another extension might be necessary.

6.      In an effort to be fair to Price and Fain, the extension was also sealed due to the excessive public speculation surrounding the subject-matter the related parallel criminal investigation.  The net goal was to provide Price and Fain with seized materials so that they could make a timely response to any asset forfeiture complaint in the way the law intended and thus greatly reduce any intervening time period when speculation would occur before Price and Fain could respond.

7.      By the beginning of March, it became clear that a second extension would be necessary.[2]  Moreover, the March 26th date would force the United States to file its asset forfeiture complaint prior to the Texas primaries.  Therefore, the United States contacted Price and Fain's attorneys to request a second extension.  Originally, both attorneys refused to consent to a second extension.  Price's attorney has since reconsidered.  However, both attorneys have said on the telephone that they do not believe that the United States is seeking to use the asset forfeiture case to improperly influence the political process and both have acknowledged the United States has no choice but to file the case at this time so long as one of the attorneys refuses to consent to a second extension.

8.      Nevertheless, the United States does not wish to be forced to file the present action in a manner that gives the false appearance that it is done for the advantage or disadvantage of any candidate or political party.  "The United States Attorney is the

---

[2] Fain's materials were ready on March 12, 2012 and her attorney picked them up on March 16, 2012. Price's materials should be ready by the end of next week.  Processing the seized documents is not simply a personnel issue.  To maintain the integrity of the evidence, the lead case agents have to examine and organize the documents for scanning.  Consequently, the FBI could not speed up the process by just assigning more agents to it.

representative not of an ordinary party to a controversy, but of a sovereignty whose

obligation to govern impartially is as compelling as its obligation to govern at all; and

whose interest, therefore, . . . is not that it shall win a case, but that justice shall be done.

As such, [s]he is in a peculiar and very definite sense the servant of the law, the twofold

aim of which is that guilt shall not escape or innocence suffer. [She] may prosecute with

earnestness and vigor-indeed, [s]he should do so. But, while [s]he may strike hard blows,

[s]he is not at liberty to strike foul ones. It is as much [her] duty to refrain from improper

methods . . . as it is to use every legitimate means to bring about a just one. *Berger v.*

*United States*, 295 U.S. 78, 88 (1935).  While Price and Fain's attorneys have conceded

that the United States is not trying to improperly influence the election process, that may

not end the inquiry.  The Supreme Court has recently declared that if a defense attorney

gives bad legal advice or fails to warn their client of the collateral consequences of

contacts with the criminal justice system, it is the United States who will pay for those

failures in the form of overturning subsequent pleas and convictions that were otherwise

fair. *See Lafler v. Cooper*, No. 10-209 (March 21, 2012) and *Missouri v. Frye*, No. 10-

444 (March 21, 2012).

9.      Except to acknowledge that it exists, the United States has remained silent

about its investigation.  While we know that it is unrealistic for that silence to continue

indefinitely, we think it is appropriate under these circumstances to place the decision as

to whether that silence should end before or after the Texas primaries in the hands of a

neutral judge.  There is a fine line to be drawn between the public's interest in this

information and protecting those under investigation. The United States will rely on this Court's considered discretion in finding delineating it.

10.    For these reasons, the United States respectfully requests that this Court consider sealing this action and all materials until May 30, 2012. Should the Court choose to seal this matter, the United States also requests that the Court order that May 30, 2012 shall be the date when the United States must begin publishing notice of the action to the public pursuant to Supplemental Rule G(4)(a)(i) of the Federal Rules of Civil Procedure's Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions. By operation of law, setting the publication date to May 30, 2012 will also delay direct notice to the potential claimants until that day or shortly thereafter. Alternatively, if the Court does not wish to delay the direct notice and would prefer to only partially seal the case, the United States can send unredacted but sealed copies of the case materials directly to potential parties and prepare a Complaint for Forfeiture and a Verification affidavit using only initials for non-parties that could be filed publicly.

Respectfully submitted,

SARAH R. SALDAÑA
UNITED STATES ATTORNEY

Walt M. Junker
Assistant United States Attorney
Texas State Bar Number 24038115
1100 Commerce Street, Suite 300
Dallas, Texas 75242
Telephone:   (214) 659-8600
Facsimile:   (214) 659-8805
walt.junker@usdoj.gov

## CERTIFICATE OF CONFERENCE

I certify that on March 26, 2012, I conferenced with John Wiley Price's attorney William Ravkind via telephone regarding the sealing of the civil asset forfeiture case and all related material until May 30, 2012 as well as having the Court set publication of that action to begin on May 30, 2012 which will also delay notice until after that date. Mr. Ravkind said he is opposed to the relief sought. I also certify that on the same day, I conference with Dapheny Fain's attorney Thomas W. Mills Jr. about the same matters. Mr. Mills is adamantly opposed to the present motion.

Walt M. Junker
Assistant United States Attorney