IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

_____

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
|       Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| $229,590.00 in United States Currency | § | 3:12-CV-893-D |
| Seized from a Safe in the Home of | § | |
| Dallas County Commissioner | § | |
| John Wiley Price | § | |
| | § | |
| $230,763.47 from Dallas County | § | |
| Commissioner John Wiley Price's Sale | § | |
| of 7001 Grady Niblo Road, Dallas, | § | |
| Texas | § | |
| | § | |
|       Defendants *In Rem.* | § | |

GOVERNMENT'S COMBINED (1) RESPONSE TO PRICE'S MOTION TO
FILE AN OUT-OF-TIME ANSWER AND TO REARGUE STANDING;
(2) MOTION TO STRIKE PRICE and FAIN AS A LITIGANTS; and
(3) MOTION TO GRANT A DEFAULT JUDGMENT

Respectfully submitted,

SARAH R. SALDAÑA
UNITED STATES ATTORNEY

Walt M. Junker                     Katherine Miller
Assistant United States Attorney       Assistant United States Attorney
Texas State Bar Number 24038115     Texas State Bar Number 00789107
1100 Commerce Street, Suite 300      1100 Commerce Street, Suite 300
Dallas, Texas 75242                  Dallas, Texas 75242
Telephone:   (214) 659-8600         Telephone:   (214) 659-8600
Facsimile:    (214) 659-8805         Facsimile:    (214) 659-8805

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ..........................................................................iii

I.   Procedural History.......................................................................... 3

    A.  Notice of forfeiture and complaint ............................................. 3

    B.  Claims and answers .................................................................. 3

    C.  Interrogatories ........................................................................ 5

II.  Government's Response to Price's Motion to Reconsider the Court's Ruling
    Denying Standing ......................................................................... 5

III. Government's Response to Price's Motion for Leave to File a Late Answer ......... 6

    A.  Price failed to show excusable neglect to justify filing an untimely
        answer in violation of Rule G(5)(b)............................................ 6

        1.  Detailed discussions with Government counsel about Price's chosen
            strategy refute his claimed reasonable basis for delay and good faith  ... 8

        2.  Price's "no harm, no foul" argument is contrary to the facts and law... 10

IV.  Government's Motion to Strike Price's and Fain's Claims and Answers and
    Motion for a Default Judgment ...................................................... 16

    A.  Price's and Fain's claims violate Rule G(5)(a)............................ 16

    B.  Price Failed to Serve Timely Responses in Violation of Rule G(6)(b) or to
        seek an Extension of Time to Respond...................................... 22

    C.  Motion to Strike Price and Fain as litigants and Motion for a Default
        Judgment ............................................................................. 22

CONCLUSION ........................................................................................ 25

CERTIFICATE OF CONFERENCE ............................................................. 25

CERTIFICATE OF SERVICE...................................................................... 26

# TABLE OF AUTHORITIES

**Cases**                                                                      **Pages**

*American Airlines, Inc. v. Reinis*, 21 F.3d 1107 (5th Cir. 1994) ....................................... 10

*Halicki v. Louisiana Casino Cruises, Inc.*, 151 F.3d 465 (5th Cir. 1998) ................... 12, 14

*Midwest Employers Casualty Co. v. Williams*, 161 F.3d 877
    (5th Cir. 1998)  ........................................................................... 7, 10, 12, 14, 15

*Peters v. United States*, 9 F.3d 344 (5th Cir.1993) ......................................................... 14

*In Re Pettle*, 410 F.3d 189 (5th Cir. 2005) .................................................................... 7, 10

*Microsoft Corp. v. H. C. Distributors, Inc.,* 145 F. App'x 864 (5th Cir. 2005) ............... 14

*Pioneer Investment Services Co. v. Brunswick Associates Ltd. Partnership*,
    507 U.S. 380 (1993) ................................................................. 7, 8, 10, 11, 12, 14

*Prizevoits v. Indiana Bell Telegraph Co.*, 76 F.3d 132 (7th Cir.1996) ............................ 12

*United States v. 8 Gilcrease Lane*, 641 F. Supp. 2d 1 (D.D.C. 2009) ............................... 19

*United States v. 27 Assorted Firearms*, 2005 WL 2645010 (W.D. Tex. 2005) ............... 20

*United States v. 74.05 Acres of Land*, 428 F. Supp. 2d 57 (D. Conn. 2006) .................... 19

*United States v. 1979 30-Foot Sea Ray*, 2000 WL 1889676 (N.D. Ill. 2000) ............. 15, 16

*United States v. $1,000.00 Refunded to Mango Creek Properties, Inc.*,
    2012 WL 254044 (D. Neb. Jan. 27, 2012) ....................................................... 23

*United States v. $1,437.00 in U.S. Currency*, 242 F. Supp. 2d 193
    (W.D.N.Y. 2002) ...................................................................................... 10, 11

*United States v. $5,730.00 in U.S. Currency*, 109 F. App'x 712 (6th Cir. 2004) ............. 20

*United States v. $6,826 in U.S. Currency*, 2010 WL 4053602 (D. Vt. Oct. 14,
    2010) ....................................................................................................... 7, 23

**Cases, cont'd**                                                          **Pages**

*United States v. 10,018.00 in United States Currency*, 345 F. App'x 24
(5th Cir. 2009)............................................................................ 23

*United States v. $12,126.00 in U.S. Currency,* 337 F. App'x 818
(11th Cir. 2009)........................................................................... 8

*United States v. $14,132.00 in U.S. Currency*, 2011 WL 3235720
(D. Col. July 28, 2011)................................................................ 22

*United States v. $25,790 in U.S. Currency*, 2010 WL 2671754 (D. Md. July 2,
2010) ................................................................................... 22, 23

*United States v. $26,620.00 in U.S. Currency*, 2006 WL 949938 (N.D. Ga. 2006) ......... 19

*United States v. $27,601.00 in U.S. Currency*, 800 F. Supp. 2d 465 (W.D.N.Y.
2011) ....................................................................................... 22

*United States v. $38,570 U.S. Currency*, 950 F.2d 1108 (5th Cir. 1992)...................... 8, 19

*United States v. $48,000 U.S. Currency*, 2007 WL 1467158
(E.D. La. May 8, 2007) ..................................................... 11, 12, 15

*United States v. $61,483.00 in United States Currency*, 2003 WL 1566553
(W.D. Tex. February 18, 2003) ................................................ 19, 21

*United States v. $88,260.00 in U.S. Currency*, 925 F. Supp. 838 (D.D.C. 1996)............. 10

*United States v. $153,968.16 Seized From Bank of America Account Number
XXXXXXX8500, et. al.*, 2007 WL 879422 (N.D. Ga. 2007) ............ 7, 9, 13, 14

*United States v. $229,590.00 in U.S. Currency*, 2012 WL 4354814
(N.D. Tex. Sept. 24, 2012)............................................................. 8

*United States v. $230,963.88 in U.S. Currency*, 2000 WL 1745130 (D.N.H. 2000) .......... 7

*United States v. $288,914 in United States Currency*, 722 F. Supp. 267
(E.D. La. 1989) ........................................................................... 22

**Cases, cont'd**                                                                 **Pages**

*United States v. $487,825.00*, 484 F.3d 662 (3d Cir. 2007) ................................. 8

*United States v. $541,395.06 in U.S. Currency*, 2012 WL 3614294
       (W.D.N.Y. Aug. 21, 2012) ........................................................ 18, 22

*United States v. Aero Jet Commander Aircraft*, 2005 WL 2000670 (S. D. Tex.
       2005) ........................................................................................ 8, 22

*United States v. Aguirre*, 476 Fed. Appx. 333 (5th Cir. 2012) .......................... 13

*United States v. All Funds on Deposit with R.J. O'Brien & Associate*, 2012 WL
       10332904 (N.D. Ill. Mar. 27, 2012) ................................................. 19

*United States v. Clark*, 193 F.3d 845 (5th Cir. 1999) ................................... 7, 14

*United States v. Contents of Accounts Numbers 3034504504 & 144-07143 at
       Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 971 F.2d 974 (3d Cir.
       1992) ........................................................................................... 20

*United States v. Land and Buildings...99 Sheffield Road*, 2006 WL 827809
       (D.N.H. 2006) ................................................................................. 7

*United States v. One 2002 Harley Davidson FXDX Super Glide Sport Motorcycle*,
       2004 WL 377552 (W.D.Tex. 2004) ............................................... 7, 8

*United States v. Real Property Located at 14301 Gateway Blvd. West, El Paso
       County Texas*, 123 F.3d 312 (5th Cir. 1997) ...................................... 8

*United States v. U.S. Currency, $81,000.00*, 189 F.3d 28 (1st Cir. 1999) ....................... 19


**Federal Statutes**

18 U.S.C. § 981(g)(2)(B) ............................................................................. 4

18 U.S.C. § 983(a) ...................................................................................... 4

18 U.S.C. § 983(d)(6) ............................................................... 2, 20, 23, 24

18 U.S.C. § 983(d)(6)(B)(i) ........................................................... 2, 19, 24

**Federal Statutes, cont'd**                                          **Pages**

18 U.S.C. § 983(d)(6)(B)(ii) .............................................................................. 24

Fed. R. Civ. P. 6(b) ........................................................................................... 7

Fed. R. Civ. P. 6(b)(1)(B) .................................................................................. 2

Fed. R. Civ. P. 55 ............................................................................................. 24

Fed. R. Civ. P. 60(b) .......................................................................................... 7

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

_____

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| $229,590.00 in United States Currency | § | 3:12-CV-893-D |
| Seized from a Safe in the Home of | § | |
| Dallas County Commissioner | § | |
| John Wiley Price | § | |
| | § | |
| $230,763.47 from Dallas County | § | |
| Commissioner John Wiley Price's Sale | § | |
| of 7001 Grady Niblo Road, Dallas, | § | |
| Texas | § | |
| | § | |
| Defendants *In Rem.* | § | |

## GOVERNMENT'S COMBINED (1) RESPONSE TO PRICE'S MOTION TO FILE AN OUT-OF-TIME ANSWER AND TO REARGUE STANDING; (2) MOTION TO STRIKE PRICE and FAIN AS A LITIGANTS; and (3) MOTION TO GRANT A DEFAULT JUDGMENT

John Wiley Price and Dapheny Fain are intervenors in this case whom the law has

given an opportunity to establish their standing to become full parties. Despite the

Government's clear instructions and repeated warnings, Price and Fain have intentionally

ignored deadlines and failed to follow rules necessary to maintain their ability to contest

the forfeiture in this case. Price now seeks to join his incomplete claim with a late

answer, a late reply to the Government's last brief, and late responses to special

interrogatories. Fain refuses to correct her incomplete claim or to provide minimal facts

to show that she is not barred from this case as an unsecured creditor or a nominee owner.

1

Pursuant to Rule G(8)(c)[1], a claimant can be struck from these proceedings "for failing to comply with Rule G(5) or (6), or because the claimant lacks standing."  The Government is seeking to strike Price as a claimant because:

1. His claim fails to identify the specific cash from the safe that he is seeking to claim in violation of Rule G(5)(a)(i)(A);

2. He failed to file an answer until two and one-half months after the deadline in violation of Rule G(5)(b) and he has not shown excusable neglect to justify a late filing in violation of FED. R. CIV. P. 6(b)(1)(B);

3. He failed to serve timely answers or objections to the Government's special interrogatories in violation of Rule G(6)(b); and

Similarly, the Government is seeking to strike Fain as a claimant because:

1. Her claim fails to identify the specific cash from the safe that she is seeking to claim in violation of Rule G(5)(a)(i)(A);

2. Her claim fails to state her property interest in these proceedings in violation of Rule G(5)(a)(i)(B); and

3. Her claim fails to provide the minimal facts necessary to show that she meets the definition of "owner" in 18 U.S.C. § 983(d)(6).  The few facts in her claim and statements of her legally authorized representative establish that she is an unsecured creditor or nominee who, by law, is barred from these proceedings. 18 U.S.C. § 983(d)(6)(B)(i) and (iii).

Therefore, this Court should strike the claims and answer of Price and Fain for failing to comply with Rule G(5) and (6), strike Price and Fain as litigants for a lack of standing, and issue a default judgment forfeiting the defendant property to the United States.

---

[1] Supplemental Rule G of the Federal Rules of Civil Procedure's Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions (Rule G).

## I.      Procedural history

### A.   Notice of forfeiture and complaint

Pursuant to this Court's Order of May 29, 2012, the Government began publication of the present civil asset forfeiture case on May 31, 2012.  Dkt. No. 10.  That same day, the Government mailed copies of the notice of forfeiture, the original and amended complaints, the original and amended verification affidavits, and other relevant documents to Price and Fain as the only known potential claimants.  Dkt. No. 15.  After also sending copies to counsel for Price and Fain via electronic mail, Government counsel called to confirm that each attorney received them.  *Id.*  Consequently, Price and Fain have had from May 31, 2012 to draft their claims and answers to the forfeiture complaint.

### B.  Claims and answers

Price and Fain filed timely claims on July 5, 2012.  In subsequent telephone conversations and in the Government's response to their motions to stay, Government counsel advised counsel for Price and Fain that their claims are deficient.  Dkt. No. 27 at 7-13.  The Government further advised Price's and Fain's attorneys that it would also seek to strike them as litigants and would move for a default judgment if these deficiencies were not corrected.  Both counsel have told the Government that their clients do not intend to amend their claims.  Accordingly, on October 22, 2012, the Government served Price and Fain with notices of intent to make an application for default judgment.  Exhibit L.

Pursuant to Rule G(5)(b), Price's and Fain's answers to the complaint were due on July 26, 2012.  After filing their claims, Price's and Fain's attorneys contacted the Government to inquire whether it was possible to stay the forfeiture proceedings. Government counsel directed them to 18 U.S.C. § 981(g)(2)(B), which, as Government counsel explained, would require that they file an answer in order to have standing to seek a stay.  Nevertheless, both Price and Fain sought a stay without filing answers.[2] Dkt. Nos. 20 and 21.  After the Government responded to the motions, this Court issued a memorandum opinion and order on September 24, 2012, finding neither Price nor Fain had standing to seek a stay because they had not filed answers, as required by  Rule G(5)(b) and 18 U.S.C. § 983(a)(4)(B).  Dkt. No. 28.

On October 11, 2012, Price filed an untimely answer to the Government's amended complaint for forfeiture, without obtaining leave of Court, more than four and one-half months from his receipt of the forfeiture notice and over two and one-half months after his deadline for filing.  Dkt. No. 35.  Subsequently, he filed a motion to file his answer out-of-time, which also included a motion to reconsider the Court's ruling that he lacks standing, asserting arguments that he failed to raise in a timely reply to the Government's response to his motion to stay.  Dkt. No. 32.

---

[2] On July 24, 2012, Government counsel offered to consent to an extension of time for both Fain and Price to file an answer.  Price's attorney declined the offer and only wanted a stay.  The Government advised Price's counsel that if he did not request an extension of time and the stay was denied, the Government would oppose any late answer and seek to strike Price as a party to the proceeding, which could result in a default judgment against him.  The Government also directed counsel's attention to Rule 6 of the Federal Rules of Civil Procedure and explained that if  he tried to file an answer after his deadline, he would likely have to show excusable neglect before he could be permitted to file. Government counsel then prepared a certificate of conference outlining many of these discussions and sent it to Price's attorney to use concerning his motion to stay.  Dkt. No. 20 at 4.

Fain filed an answer to the amended complaint on her extended deadline of October 15, 2012.  Dkt. No. 27.

### C.     Interrogatories

The Government also served special interrogatories on Price and Fain on July 24, 2012 so that they could seek simultaneous extensions on both the deadline for their answers and their interrogatory responses.  While Fain obtained an extension from the Court for her interrogatory responses until November 12, 2012, Price declined the Government's offer and missed his August 14, 2012 deadline to serve his interrogatory responses on the Government.  Rather, like his late answer, he served responses to the special interrogatories on the Government on October 24, 2012 – more than two and one-half months late.[3]  Exhibits J and K.

## II.     Government's Response to Price's Motion to Reconsider the Court's Ruling Denying Standing

In his motion to reconsider, Price does not present any new facts or law to justify this Court's reversal of its reasoning that he does not have standing.  Dkt. No. 32.  He merely repeats his earlier assertions that he has standing because, he claims, proceeding with the civil case interferes or violates his Fifth Amendment protections.  Yet contrary to his repeated assertions that the Government brought a civil case "to fill in the holes its misguided criminal investigation" in violation of his Fifth Amendment rights, Dkt. No. 32, ¶ III, the Government did not seek to compel either Price's late answer or his late responses to the special interrogatories, as it had already advised Price's attorney that it

---

[3] Price amended this response on October 29, 2012 to correct the middle name given in his original response. Exhibit K.

would be seeking to strike Price from these proceedings.  Exhibits G and H.  The Government specifically told Price's attorney that would it would *oppose* any late documents and would seek to strike Price as a litigant *before* Price ever filed his answer or served his late responses to the special interrogatories.

Further, as stated its response to Price's and Fain's motions to stay, the Government freely acknowledged that "[t]he Fifth Amendment contains important rights that must be protected, and the claimants are free to invoke its protections at any time in these proceedings."  Dkt. No. 27 at 17.  Significantly, despite his recurring protests, Price has not invoked the Fifth Amendment even one time in his claim, answer, or responses to the special interrogatories.  Dkt Nos. 16 and 35; Exhibits J and K.  In short, Price provides no authority for his unsupported claims that compel this Court's reversal of its ruling on standing.

## III.    Government's Response to Price's Motion for Leave to File a Late Answer

### A.    Price failed to show excusable neglect to justify filing an untimely answer in violation of Rule G(5)(b).

To file a late answer, under Rule 6(b)(1)(B) of the Federal Rules of Civil Procedure Price must show "excusable neglect" for his failure to file a timely answer *and* his failure to seek an extension of time before his time to file expired.  The single sentence Price devotes to this issue in his motion falls far short of this high burden.  Dkt. No. 32, ¶ XIV.

Rule G does not contain a provision for extending the time to file an Answer.[4]

However, several courts have posited that Rule G(1) incorporates Federal Rule of Civil

Procedure 6(b) to permit an extension of the time to file an Answer.[5]  Rule 6(b) provides:

> When an act may or must be done within a specified time, the court may, for good cause, extend the time:

> (B) on motion made after the time has expired if the party failed to act because of excusable neglect.

FED. R. CIV. P. 6(b)(1)(B).

Determining whether a party's failure to act was excusable neglect "is at bottom

an equitable one, taking account of all relevant circumstances surrounding the party's

omission."  *Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395

(1993).[6]  The concept encompasses a spectrum of conduct ranging from an act of God

that prevents a timely filing, to intentionally flouting a deadline.  *Id* at 387-388.  To

decide where a movant is on that spectrum, courts are to consider the following non-

exclusive list of circumstances: (1) the danger of prejudice to the opposing party; (2) the

length of the delay and its potential impact on judicial proceedings such as efficient court

---

[4] Extending the time for filing an *answer* should not be confused with extending the time for a *claim*, which Rule G(5)(a)(ii) permits a court to do "for good cause."  Price conflates the two concepts when he seeks to use the factors listed in *United States v. $153,968.16 Seized From Bank of America . . .* , 2007 WL 879422, at *4 (N.D. Ga. 2007) (involving failure to file a claim and an answer).

[5] *United States v. One 2002 Harley Davidson FXDX Super Glide Sport Motorcycle,* 2004 WL 377552, *3 (W.D.Tex. 2004); *United States v. Land and Buildings...99 Sheffield Road,* 2006 WL 827809, *5 (D.N.H. 2006); *United States v. $230,963.88 in U.S. Currency,* 2000 WL 1745130, *3-4 (D.N.H. 2000); and *United States v. $6,826 in U.S. Currency,* 2010 WL 4053602, *2 (D. Vt. Oct. 14, 2010).

[6] *Pioneer* construed the bankruptcy counterpart of Rule 6(b)(1)(B).  The Fifth Circuit appears to have adopted *Pioneer* for all procedures utilizing the excusable neglect standard, not limited to only FED. R. CIV. P. 6(b).  *Cf. In Re Pettle,* 410 F.3d 189, 192 (5th Cir. 2005) (FED. R. CIV. P. 60(b)); *Midwest Employers Casualty Co. v. Williams*, 161 F.3d 877, 880 (5th Cir. 1998) (civil case with FED. R. APP. P. 4(a)(5)); *United States v. Clark*, 193 F.3d 845, 847 (5th Cir. 1999) (criminal case with FED. R. APP. P. 4(b));   Therefore, cases discussing excusable neglect will be referred to in this brief without distinction.

administration; (3) the reason for the delay and whether it was within the reasonable control of the movant; and (4) whether the movant and his attorneys acted in good faith. *Id.* at 385-86 and 395.

Moreover, the Fifth Circuit has required "strict compliance" with the deadlines that govern the filing of claims and answers in asset forfeiture lawsuits. *United States v. Real Property Located at 14301 Gateway Blvd. West, El Paso County Texas*, 123 F.3d 312, 313 (5th Cir. 1997) (*citing United States v. $38,570 U.S. Currency,* 950 F.2d 1108, 1115 (5th Cir. 1992)). *See also United States v. One 2002 Harley Davidson FXDX Super Glide Sport Motorcycle,* 2004 WL 377552, at *3 (W.D. Tex. 2004). As this Court recognized in its recent memorandum and order denying Price's and Fain's request for a stay, district courts are entitled to insist upon procedural regularity and strict compliance with the requirements set forth in Rule G. Dkt. No. 28, *United States v. $229,590.00 in U.S. Currency,* 2012 WL 4354814 (N.D. Tex. Sept. 24, 2012) (*quoting United States v. $12,126.00 in U.S. Currency,* 337 F. App'x 818, 820 (11th Cir. 2009)). *See also United States v. $487,825.00*, 484 F.3d 662, 665-66 (3d Cir. 2007); *United States v. Aero Jet Commander Aircraft*, 2005 WL 2000670, at *2 (S.D. Tex. 2005).

## B. Detailed discussions with Government counsel about Price's chosen strategy refute his claimed reasonable basis for delay and good faith.

Price is firmly at the negative end of the excusable neglect spectrum. Setting aside the first two *Pioneer* criteria momentarily, Price's sole reason offered for the delay in filing an answer is "the Commissioner's reasonable belief that he should have been granted a stay." Dkt. No. 32 at 4. This excuse does not withstand even minimal scrutiny,

given the detailed discussions between Government counsel and his attorney concerning the substantial, negative ramifications that would result from his strategy to intentionally not timely file an answer or seek an extension of time to file an answer.  Counsel for the Government contacted Price's attorney, told him of the deadline, offered to consent to an extension if requested, and explained exactly what could happen if his motion for a stay failed and he had not requested an extension.  Price then made a strategic decision to flout the answer deadline without requesting an extension, an action that this Court can reasonably construe as an intentional given the explicit discussions of case law and procedural rules completely contrary to his position.  He cannot credibly claim now that he made a good faith effort to comply with the deadline but failed due to some form of mistake, accident, or neglect.  Rather, his choice to seek a stay without having filed an answer – in the face of clearly contrary authority, coupled with his insistence that the proceedings interfere with his Fifth Amendment protections – demonstrate that he made a calculated decision to avoid filing a sworn answer to the Government's detailed complaint, in the hope that the Court would stay the lawsuit.

His claimed "reasonable belief" is further belied by his failure to present any authority even marginally indicating that a motion to stay would be successful.  Rather, he cited an opinion contrary to his position, as the Court there concluded that: (1) a claimant cannot obtain a stay without first filing an Answer; (2) parallel criminal and civil proceedings do not violate constitutional rights; and (3) blanket Fifth Amendment invocations do not invalidate forfeiture proceedings.  *United States v. $153,968.16 Seized From Bank of America Account No. XXXXXXX8500, et. al.*, 2007 WL 879422 (N.D.

Ga. 2007).  Thus, Price's own cited authority provides no basis to ignore an unambiguous

statutory and procedural deadline.

As the Fifth Circuit held, "neglect that is willful cannot be excusable[]."

*American Airlines, Inc. v. Reinis*, 21 F.3d 1107, *2 n. 10 (5th Cir. 1994).  Price

"consciously chose to pursue a different avenue . . . and [his] 'failure to evaluate carefully

the legal consequences of a chosen course of action provides no basis for relief[.]'"

*United States v. $88,260.00 in U.S. Currency*, 925 F. Supp. 838, 843 (D.D.C. 1996)

(citations omitted).  Excusable neglect "is not for the purpose of relieving a party from

free, calculated, and deliberate choices he has made."  *In Re Pettle,* 410 F.3d 189, 192

(5th Cir. 2005).

Moreover, even if Price thought that his belief was reasonable, existing authority

does not suggest that a litigant acts in good faith when he intentionally chooses both to

withhold an answer *and* decline to seek an extension.  Courts have not created an

"inconvenient timing" exception to Rule G.  *See United States v. $1,437.00 in U.S.

Currency*, 242 F. Supp. 2d 193, 196 (W.D.N.Y. 2002).  Here, Price should have sought

an extension on his answer to permit sufficient time for the Court to rule on his motion to

stay before his answer was due.  He intentionally failed to act in this regard.  Allowing a

deadline to pass while waiting for a ruling on a motion does not equate to good faith.

*Midwest Employers Casualty Co. v. Williams*, 161 F.3d 877, 880 (5th Cir. 1998).

### C.    Price's "no harm, no foul" argument is contrary to the facts and law.

Under *Pioneer*, two further considerations that weigh against Price's showing of

excusable neglect are (1) the danger of prejudice to the Government, and (2) the length of

the delay and its potential impact on judicial proceedings such as efficient court administration.  *Pioneer*, 506 U.S. at 385-86 and 395.   Price argues that permitting his late filing will not prejudice the Government because "the government already has sufficient notice of the Commissioner's claim and the government is not prejudiced; it has the money."  Dkt. No. 32 at 4.  His theory about whether the Government has or will suffer prejudice contradicts the law and is belied by the facts in this case.

First, the Government has been prejudiced.  If Price and Fain had followed the procedural rules governing forfeiture and filed valid claims and answers demonstrating their standing in a timely manner, the Government could have simply consented to a stay of the forfeiture proceedings.  Instead, these litigants filed vague, deficient claims and motions with incomplete legal research and often meritless contentions, tying up Government counsel in needless civil litigation and taking time away from an important parallel criminal investigation.  Further, the Government has had to draw additional attorneys away from other cases in order to maintain the pace of the criminal investigation.  Multiple courts have held that the late filing of an answer prejudices the Government because it increases the length and cost of litigation.  *See United States v. $48,000 U.S. Currency*, 2007 WL 1467158, at *3 & n.1 (E.D. La. May 8, 2007); *United States v. $1,437.00 in U.S. Currency*, 242 F. Supp. 2d at 196 ("As a result of the late filing of the answer and the opposition to the government's motion, the litigation in this case has been protracted to the government's detriment.")  Likewise, Price's intentional refusal to file a timely answer should weigh against him here.

11

Moreover, even if the Court accepted Price's conclusory assertion that the Government has not suffered prejudice because it is aware of his claim, the Fifth Circuit has rejected Price's notion that the absence of harm excuses his strategic choice not to timely file an answer. "'The word 'excusable' would be read out of the rule if inexcusable neglect were transmuted into excusable neglect by a mere absence of harm.'" *Halicki v. Louisiana Casino Cruises, Inc.*, 151 F.3d 465, 469 (5th Cir. 1998) (*quoting Prizevoits v. Indiana Bell Tel. Co.,* 76 F.3d 132, 134 (7th Cir.1996)). *See also Midwest Employers Casualty Co.*, 161 F.3d at 879-80 (holding that a magistrate judge abused his discretion when he found excusable neglect based solely on ignorance of procedure and lack of prejudice to the opponent). "And even if the government was not prejudiced, '[a]llowing a late filing whenever the government would not be prejudiced would subvert the strict time limits established by Supplemental Rule [G(5) ] and encourage claimants to litigate every untimely filing in a forfeiture case.'" *United States v. $48,000 U.S. Currency*, 2007 WL 1467158, *3 (E.D. La. May 8, 2007) (citations omitted).

Price also fails to address, as he must in order to establish excusable neglect under *Pioneer*, the length of the delay and its potential impact on judicial proceedings such as efficient court administration. *See Pioneer*, 507 U.S. at 385 and 395. Here, Price did not file his answer until over four and one-half months from when he first received the forfeiture notice and more than two and one-half months beyond his deadline for filing. As the Fifth Circuit recently ruled, a filing nearly four months from the forfeiture notice and two months after the deadline for filing was prejudicial to the Government because it

12

would allow the reopening of numerous forfeitures by similarly-situated late claimants.
*United States v. Aguirre*, 476 F. App'x 333, 334-35 (5th Cir. 2012).[7]

Additionally, permitting claimants to ignore the rules and instead gamble at a favorable ruling without having to bear procedural consequences for that tactic harms the Government and judicial economy. Every subsequent claimant, encouraged by favorable rulings under circumstances similar to those here, will be encouraged to follow in their footsteps , take the same gamble, and saddle the courts and the Government with increased litigation, time, and expenses. The "'legal system would groan under the weight of a regimen of uncertainty in which time limitations were not rigorously enforced.'" *United States v. $6,826 in U.S. Currency,* 2010 WL 4053602, *2 (D. Vt. Oct. 14, 2010).

Price erroneously cites "the considerations in *United States v. $153,968.16*, 2007 WL 87942 [sic] [(N.D. Ga. 2007)]" as the basis for his motion to file a late Answer. Dkt. No. 32 at 4. However, his reliance on *$153,968.16* is flawed in two respects.[8] First, Price confuses the factors for the lower burden of "good cause" with that of the higher burden of "excusable neglect." In *$153,968.16*, the potential claimants failed to file both claims and answers before they sought a stay. But unlike Price, they sought and obtained

---

[7] This concern is not absent from the present case. In addition to Price and Fain, Government counsel was contacted on June 15, 2012 by an attorney for a third party who contemplated making an improbable claim to the property. That potential claimant reconsidered when the Government explained that his claim would have to be signed under penalty of perjury. However, if deadlines have no meaning, he and others like him may reconsider whether they want to throw their hat into the ring and gamble on a claim to the property.

[8] The Government did cite this case in its response to Price's motion to stay, but only as persuasive authority for the proposition that one cannot have standing to seek a stay without filing an answer. Dkt. No. 27 at 17, n. 24.

an extension of the time to file a claim, which automatically extended their time to file an answer under Rule G(5)(b).  There, the potential claimants had to show only good cause. Price, however, filed a claim and then ignored his deadline to file an answer.  Thus, he must also establish excusable neglect.  The Court's opinion in *$153,968.16* is therefore distinguishable and does not help him overcome this burden.

Second, to the extent that Price cites *$153,968.16* to suggest that his failure to file a timely answer was his attorney's error and that he, as a litigant, should never be held responsible for his attorney's actions or decisions, the United States Supreme Court expressly rejected such an argument in *Pioneer.  Id*., 507 U.S. at 396-397 ("Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent.  Any other notion would be wholly inconsistent with our system of representative litigation .")  That is not to say that a party could never rely on his attorney's inadvertent errors to prove excusable neglect in some circumstances, particularly in criminal cases involving constitutional concerns about ineffective assistance of counsel.  *Clark*, 193 F.3d at 847 (5th Cir. 1999).  In the civil realm, however, while courts have left open "the possibility that some misinterpretations of the federal rules may qualify as excusable neglect, such is the rare case indeed."  *Midwest Employers Casualty Co.*, 161 F.3d at 879.  Moreover, reliance on an attorney's misinterpretation of an unambiguous, well-settled rule affecting the date for filing a notice of appeal is inexcusable.  *See Halicki,* 151 F.3d at 469-70; *see also Peters v. United States,* 9 F.3d 344, 345 (5th Cir.1993); *Microsoft Corp. v. H. C. Distributors, Inc.,* 145 F. App'x 864, 865 (5th Cir. 2005) (finding no abuse of discretion

14

where district court denied motion to file late notice of appeal and motion to overturn default judgment after finding litigant's reliance on attorney's misinterpretation of unambiguous deadline was inexcusable).  "Where, as here, the rule at issue is unambiguous, a district court's determination that the neglect was inexcusable is virtually unassailable.  Were it otherwise, 'almost every . . . lawyer would plead his own inability to understand the law when he fails to comply with a deadline.'" *Midwest Employers Casualty Co.*, 161 F.3d at 879 (citations omitted).  *See also United States v. 1979 30-Foot Sea Ray*, 2000 WL 1889676, *4 (N.D. Ill. 2000) ("A party confronted by a filing deadline cannot allow the time to lapse and then try to resurrect her rights simply by claiming ignorance.  If that were the case, every attorney could feign ignorance, and the deadlines would effectively cease to exist.").

Here, any claim that Price or his counsel misinterpreted the deadline lacks credibility.  Rule G(5)(b) unambiguously states that Price had 21 days from the filing of his claim to serve and file either an answer or a Rule 12 motion.  Further, the Government gave the precise deadline to Price's attorney and explained exactly what the Government's next steps would be and the significant, impending consequences if he failed to request an extension and did not prevail on his motion to stay the proceedings.  Price is represented by a seasoned attorney who, by his own admission, claims to have "decades of practice" in federal forfeiture cases.  Dkt. No. 32, ¶ V.  At least one court has held that an attorney's prior forfeiture experience militates against an excusable neglect finding.  *United States v. $48,000 U.S. Currency*, 2007 WL 1467158, *4 (E.D. La. May 8, 2007).

Finally, equally damaging to Price's case for excusable neglect is the fact that Price and his attorneys did not request an extension even though the Government originally offered to consent to one.  *See United States v. 1979 30-Foot Sea Ray*, 2000 WL 1889676,  at *2 (N.D. Ill. 2000) (finding no excusable neglect where attorney failed to request an extension of time to file after the Government offered to consent).

In sum, Price's paltry excuse for choosing not to file a timely answer is not sufficient to meet the high burden imposed on those who demonstrate utter disregard for the law.  Price's motion to file out-of-time should be denied because civil "law ministers to the vigilant not to those who sleep upon perceptible rights."  *1979 30-Foot Sea Ray,* 2000 WL 1889676, at *3.

## IV.   Government's Motion to Strike Price's and Fain's Claims and Answers and Motion for Default Judgment

### A.     Price's and Fain's claims violate Rule G(5)(a).

Rule G(5)(a)(i) mandates that a claim must "(A) identify the *specific* property claimed; (B) identify the claimant and *state the claimant's interest* in the property; and (C) be signed by the claimant under penalty of perjury."  (emphasis added).  Both Price's and Fain's claims fail to specify the specific property they are claiming from the safe and Fain's claim fails to state her interest in the property.  Dkt. Nos. 16 and 18.  The Government previously informed Price and Fain's attorneys that their client's claims are insufficient because they fail to comply with Rule G(5)(a).  On August 14, 2012, the Government's response to the motions to stay reduced these deficiencies to writing and suggested ways they could correct these deficiencies.  Dkt. No. 27 at 7-13.  Yet neither

Price nor Fain has filed an amended claim with corrections.  In addition, prior to filing the instant motions to strike, the Government conferred with counsel for both and confirmed that they have no intention of amending their claims.  Because of these deficiencies, which are discussed in further detail below, striking Price's and Fain's claims under Rule G(8)(c) is proper.

In its complaint, the United States carefully described in detail the groupings of money seized from the safe to enable Price and Fain to specify the exact money they are claiming.[9]  The complaint is an *in rem* action against *specific* property and not the more general *in personam* action against a person or group of people.  Consequently, Price and Fain cannot simply specify an *amount* of money they are seeking as they would for a money judgment in an *in personam* case.  Conversely, for an *in rem* case, Price and Fain must specify the exact groupings of cash that they are seeking to claim from the safe in order to have standing.  In addition, since Price and Fain have decided that each will claim only part of the money they will need to explain which money belongs to whom or how they arrived at the split between themselves.

As the Government advised in conversations with counsel and in the Government's pleadings, Price's and Fain's claims fail to provide these specifics.  Instead, each claim merely asserts ownership of a sum of money without identifying exactly which bills constitute these sums.  And because (1) none of the paperwork or envelopes in the safe had Fain's name on them, and (2) the money does not naturally

---

[9] The Government also offered Price, Fain, and their attorneys the opportunity to examine in person the  money that was seized from the safe.

divide up into the near 50-50 split to which Price and Fain have sworn, the claims'
assertions as to certain sums of cash appear arbitrary.

### 1.    Fain's claim

Moreover, in his capacity as Mrs. Fain's legal representative, Fain's counsel told
a CBS Channel 11 reporter on or about June 5, 2012 that "[Fain] did not have a ledger for
every time [the cash in the safe] went out and every time it went in; she doesn't have a
ledger."  Exhibit E.  Likewise, Fain's answer to the complaint confirms that she did not
have any accounting of the money in the safe and did not know the safe's combination.
Dkt. No. 37 at 68, Response No. 280(f) and (g).  Commissioner Price has also confirmed
that he did not account for or track the currency that he is purported to have placed in his
safe for Ms. Fain.  Exhibit J at 36, Response to Special Interrogatory No. 24.

Thus, Fain's claim to the money still appears to be nothing more than an
unsecured "I owe you."  She is essentially alleging that she gave money to Price, which
was mixed in with other money in the safe, and that he owes her a debt that neither she
nor he have been tracking.  Without laying claim to specific cash, Fain is not claiming
any of the specific property in this case.  Rather, she is only claiming a number or amount
of money that Price owes her—an unsecured "I owe you"—rendering her only an
unsecured creditor.[10]  If that is the case then Fain does not have standing in the forfeiture

---

[10] *United States v. $541,395.06 in U.S. Currency,* 2012 WL 3614294, at *2-*3 (W.D.N.Y. Aug. 21, 2012)
(holding that bank depositors generally do not retain ownership of the funds they deposit and are only
unsecured creditors of the bank).  Fain's administrative claim also supports the conclusion that she is only
claiming an amount of money that represents a debt because she states "the portion" of the money she is
claiming "represents" the proceeds of her business instead of saying the money *is* the proceeds of her
business. Exhibit B.  This falls short of her Rule G obligations to claim ownership of specific bills from
the safe.

case because the standing of unsecured creditors is barred by 18 U.S.C. §
983(d)(6)(B)(i).[11] Her remedy is to file an *in personam* action against Price to obtain a
money judgment against him for the money.

Her failure to identify the specific property she is claiming is also amplified by her
failure to comply with Rule G(5)(a)(i)(B). The Government's complaint has alleged that
Fain is nothing more than a straw owner—a nominee—and Fain's claim does not quiet
these concerns, as it is nothing more than a bare-bones claim that "$114,590.000 [sic] is
Fain's personal property" and she has a "right" to it. Dkt. Nos. 18, 18-1, and 11-1, ¶ 281.
A "claimant must come forth with *some* evidence of [her] ownership interest . . . a bare
assertion of ownership of the *res*, without more, is inadequate to prove an ownership
interest sufficient to establish standing." *$38,570 U.S. Currency,* 950 F.2d at 1112.[12]

---

[11] *See, e.g., United States v. $61,483.00 in United States Currency,* 2003 WL 1566553, at *3 (W.D. Tex.
February 18, 2003) (holding that under Texas law, giving money to another, even as a loan, does not
establish standing in *specific* forfeitable property absent a signed agreement in writing giving claimant
rights to the money as collateral); *$500,000.00,* 591 F.3d at 404 (to establish prudential standing, the party
must show that his interest in the property "is arguably within the zone of interests to be protected or
regulated by the statute;" in forfeiture cases, that means the claimant must establish that he is an "owner"
in terms of § 983(d)(6)). *See also United States v. 8 Gilcrease Lane,* 641 F. Supp.2d 1, 5 (D.D.C. 2009)
(holding that to establish statutory standing, claimant must comply with Rule G(5) and establish a legal
interest in the property in terms of 18 U.S.C. § 983(d)(6); unsecured creditors cannot satisfy the latter
requirement); *United States v. 74.05 Acres of Land*, 428 F. Supp. 2d 57, 65 (D. Conn. 2006) (finding
claimant who had an equitable interest in real property had Article III standing but did not have statutory
standing because equitable interests are excluded from the definition of "owner" in section 983(d)(6));
*United States v. All Funds on Deposit with R.J. O'Brien & Assoc.*, 2012 WL 10332904, at *5-6 (N.D. Ill.
Mar. 27, 2012) (finding that unsecured creditor lacks both prudential standing - because he falls outside
the definition of "owner" in § 983(d)(6) – and statutory standing – because he cannot comply with the
requirement in Rule G(5) that he allege an interest in specific property).

[12] *See also, e.g., $138,381,* 240 F. Supp. 2d at 231 (where non-possessory claimant's *only* basis for
standing is her allegation that she is an owner, proof of ownership is required to establish standing);
*United States v. $26,620.00 in U.S. Currency,* 2006 WL 949938, *6 (N.D. Ga. 2006) (person not in
possession of the currency when it was seized, and who claims to be the owner of the currency, must
satisfy the definition of "owner" in section 983(d)(6)); *United States v. U.S. Currency, $81,000.00*, 189
F.3d 28, 35 (1st Cir. 1999) (to establish standing, claimant with legal title to joint bank account must

Fain does not specify what "right" she has to the property or directly claim an ownership interest in it.  Dkt. No. 18.[13]  Fain has the burden of complying with Rule G(5) to prove her own standing in this case.  Yet, she leaves the Court to guess at whether she may be an unsecured creditor or a nominee owner whose standing is barred by 18 U.S.C. 983(d)(6).

### 2.    Price's claim

Price's claim violates Rule G(5)(a)(i) in the same way that Fain's does:  he fails to identify the specific property he is claiming from the safe.  In his administrative claim, Price originally claimed all of the cash in the safe—half as an owner and half as a custodian or a "bailee" of for Fain.[14]  If Price continued to claim he was a bailee of Fain's money, he would have to state the colorable legitimate interest he has in specific groups of money that he stored for Fain, identify Fain as the bailor, and state his authority to file

---

[13] show he was not a nominal or straw owner); and *United States v. Contents of Accounts Nos. 3034504504 & 144-07143 at Merrill, Lynch, Pierce, Fenner & Smith, Inc.*, 971 F.2d 974, 985 (3d Cir. 1992) ("Courts have uniformly rejected standing claims put forward by nominal or straw owners. Thus, even possession of legal title to the *res* may be insufficient to establish standing to contest the forfeiture.").

[13] Fain's administrative claim to the property was more specific. Exhibit B at 6.  However, Fain is not permitted to rely on her administrative claim for her civil claim.  *United States v. 27 Assorted Firearms*, 2005 WL 2645010, *3 n.1 (W.D. Tex. 2005) (administrative and civil judicial forfeiture are separate proceedings; a claim filed in an administrative forfeiture proceeding does not take the place of the claim required by section 983(a)(4) and Rule C(6)) and *United States v. $5,730.00 in U.S. Currency*, 109 Fed. Appx. 712, 714 (6th Cir. 2004) (CAFRA did not change the rule that claim filed in administrative forfeiture proceeding does not satisfy the requirement in Rule C(6)).

[14] His administrative claim read, "I am owner in part and give notice contesting seizure as custodian in part of the $229,590.00 U.S. Currency.  I assert claim of ownership to $115,000.00 of the funds seized, and assert interest as custodian for Dapheny E. Fain of the balance of the funds seized, or $114,590.00." Exhibit A.

a claim as a bailee.[15]   Apparently, he recognized this issue before filing his civil claim,

because he dropped his sworn statement that he was the custodian of funds for Fain.  Yet,

this artful omission does not allow Fain or Price to evade the directives in Rule

G(5)(A)(iii) and 18 U.S.C. § 983(d)(6)(B)(ii).  Price and Fain must give some

explanation of their relationship to the money and how their claims should be divided, or

they lack standing to contest the forfeiture of the money in the safe.  Initially, Price

indicated through his attorney that he would have no problem accounting for the money

in the safe.[16]  Now, however, he fails or refuses to account for the money.  Exhibit # J at

36, Responses to Special Interrogatories Nos. 24 and 25.[17]  However, Price bears the

burden of proving his own standing to claim the money in the safe, and because he has

not done so, this Court should strike his claim.

---

[15] *See* Rule G(5)(A)(iii); 18 U.S.C. § 983(d)(6)(B)(ii).  As to stating his legal authority, "Texas defines a
bailment as '(1) the delivery of personal property from one person to another for a specific purpose; (2)
acceptance by the transferee of the delivery; (3) an agreement that the purpose will be fulfilled; and (4) an
understanding that the property will be returned to the transferor.'" *$500,000.00 in U.S. Currency*, 591
F.3d at 405 and *$61,483.00,* 2003 WL 1566553 *3 (same).

[16] "If there was money in his house, I'm telling you we can account for it."  Public statement of William
M. Ravkind as the legal representative of Commissioner John Wiley Price to WFAA channel 8 reporter
on or about June 29, 2011.  *See* http://www.wfaa.com/news/politics/Price-Attorney-Denies-Reports-of-
Cash-Found-Asks-FBI-for-Search-Warrant-124752609.html. "There is an absolute explanation for it.  I
think we can explain every penny of it."*Id.* to NBC channel 5 reporter on or about June 29, 2011.  *See*
http://www.nbcdfw.com/news/local/FBI-Found-100K-Cash-In-Prices-House-Lawyer.html .

[17] These Special Interrogatories request an accounting of the $229,590.00 in United States currency in the
safe prior to June 27, 2011 (No. 24) and after June 27, 2011 (No. 25).  Price responded:  No. 24 - "At this
time, and to the best of Claimant [Price]'s current knowledge and recollection, Claimant does not believe
that the ownership of each piece of currency comprising the $229,590.00 in United States currency which
was . . . seized from a safe in his home was accounted for or tracked prior to June 27, 2011."  No. 25 -
"Claimant [Price] objects to this special interrogatory to the extent that it violates the work-product and/or
attorney client privileges.  Subject to and without waiving same, at this time, and to the best of Claimant's
current knowledge and recollection, the answer is no."

**B.     Price failed to serve timely responses in violation of Rule G(6)(b) or to seek an extension of time to respond.**

Price's failure to serve timely responses to the Government's special interrogatories as required by Rule G(6)(b), or to seek an extension of time to respond, provides another basis to strike his claim.  On July 24, 2012, the Government served special interrogatories on Price and Fain, with a deadline of August 14, 2012 to respond pursuant to Rule G(6)(b).  The Government served these special interrogatories earlier than it had intended so that Price and Fain could seek an extension of time to respond to them at the same time that they sought an extension of time to file their answers to the complaint.  While Fain sought and obtained a 90-day extension from the Court to answer the interrogatories, Price did not.  Price also did not serve his responses on or before the deadline.  Although Price filed answers, they were untimely, in violation of Rule G(6)(b).  Thus, pursuant to Rule G(8)(c)(i)(A), this Court should strike his claim.

**C.     Motion to Strike Price and Fain as litigants and for a Default Judgment**

To have standing to contest a forfeiture in a civil proceedings, a potential claimant must have *both* a valid claim and a valid answer that comply with Rule G.[18]  If a potential

---

[18] *Cf. United States v. $541,395.06 in U.S. Currency,* 2012 WL 3614294, *3 (W.D.N.Y. Aug. 21, 2012) (striking claim for lack of statutory standing where claimant, an attorney, had no excuse for filing answer to complaint one day late); *United States v. $14,132.00 in U.S. Currency,* 2011 WL 3235720, *1(D. Col. July 28, 2011) (granting Rule G(8)(c) motion to dismiss for lack of statutory standing where claimant filed claim but no answer); *United States v. $27,601.00 in U.S. Currency,* 800 F. Supp.2d 465, 467 (W.D.N.Y. 2011) (same, collecting cases requiring strict compliance with Rule G(5)); *United States v. $25,790 in U.S. Currency,* 2010 WL 2671754, *2 (D. Md. July 2, 2010) (the pleading requirements in Rule G(5) "must be strictly enforced;" a claimant who does not comply with those requirements lacks statutory standing); *United States v. Aero Jet Commander Aircraft,* 2005 WL 2000670, *2 (S.D. Tex. 2005) (granting Government's motion to strike claim of lienholder that filed claim but no answer; claimant who fails to comply with Rule C(6) lacks statutory standing); and *United States v. $288,914 in*

claimant fails to comply with Rule G(5), Rule G(6), or lacks standing, the Government may seek to strike the claimant's claim and answer at any time prior to trial pursuant to Rule G(8)(c).  *Id.*  The Government may then seek a default judgment against any potential claimant who has had their Claim or Answer struck.[19]

As described above, Price intentionally violated sections (5) and (6) of Rule G by failing to file a claim that identifies the specific property he is claiming from the safe in violation of Rule G(5)(a)(i)(A), failing to file a timely answer in violation of Rule G(5)(b), and failing to respond to the special interrogatories on time in violation of Rule G(6)(b).  Consequently, this Court should strike Price's claim and answer, and strike Price as a litigant for his failure to establish himself as a proper party to these proceedings.  Rule G(8)(c)(i)(A) and (B).

Likewise, as previously stated, Fain has violated Rule G(5) by failing to file a claim that identifies the specific property she is claiming from the safe in violation of Rule G(5)(a)(i)(A), failing to file a claim that states her interest in the property in violation of Rule G(5)(a)(i)(B), and failing to establish that she has proper standing to contest the forfeiture of the property pursuant to 18 U.S.C. § 983(d)(6) and that 18 U.S.C.

---

*United States Currency*, 722 F. Supp. 267, 270 (E.D. La. 1989) ("in order to have standing to challenge a forfeiture, a claimant must strictly comply with the pleading requirements of Supplemental Rule C(6)").

[19] *United States v. $1,000.00 Refunded to Mango Creek Properties, Inc.*, 2012 WL 254044, *2 (D. Neb. Jan. 27, 2012) (granting motion to strike for lack of statutory standing and entering default judgment); *United States v. $6,826 in U.S. Currency,* 2010 WL 4053602, at *3 (D. Vt. Oct. 14, 2010) (granting motion to dismiss claim for failing to comply with Rule G(5) and granting Government's motion for a default judgment); *United States v. $25,790 in U.S. Currency,* 2010 WL 2671754, at *2 (D. Md. July 2, 2010) (granting motion to strike late claim for lack of statutory standing, and entering immediate default judgment because there were no other claimants); *United States v. 10,018.00 in United States Currency*, 345 Fed. Appx. 24, 25 (5th Cir. 2009) ("finding that default judgment is appropriate in a forfeiture action when no responsive pleadings are timely filed by a claimant.*")

§ 983(d)(6)(B)(i) and (iii) do not bar her claim.  Consequently, this Court should strike Fain's claim pursuant to Rule G(8)(c)(i)(A) for her failure to comply with Rule G(5). Further, the Court should strike her answer because she cannot have statutory standing without a valid claim and because she has failed to establish her standing in compliance with 18 U.S.C. § 983(d)(6).  Finally, she should be struck as a litigant for her failure to establish herself as a proper party to these proceedings.

Pursuant to Rule 55 of the Federal Rules of Civil Procedure, the Government has served both Price and Fain, through their attorneys, with a seven-day advance written notice that the Government would be seeking a default judgment against them.  Exhibit L.  No other individual has made any claim in these proceedings.  Therefore, if the Court strikes both Price and Fain as claimants, the Government further requests the Court to issue a default judgment of forfeiture in the Government's favor pursuant to Rule 55(b)(2).  In the event that Court strikes only one of the purported claimants, the Government requests the Court to issue a partial default judgment in the Government's favor under Rule 55(b)(2), forfeiting the property formerly claimed by that claimant to the Government, as Price and Fain do not purport to claim the same property and no other claims have been filed.  Because the Government believes that these matters may be decided on motion practice, it is not requesting a hearing.

## V.     CONCLUSION

WHERFORE, the United States requests this Court strike the claims and answers of Price and Fain for their violations of Rule G(5) and (6) and for their lack of standing; strike Price and Fain as litigants; and enter a default judgment of forfeiture in favor of the United States.

Respectfully submitted,

SARAH R. SALDAÑA
UNITED STATES ATTORNEY

s/ *Walt M. Junker*

Walt M. Junker
Assistant United States Attorney
Texas State Bar Number 24038115
1100 Commerce Street, Suite 300
Dallas, Texas 75242
Telephone:   (214) 659-8600
Facsimile:    (214) 659-8805

s/ *Katherine Miller*

Katherine Miller
Assistant United States Attorney
Texas State Bar Number 00789107
1100 Commerce Street, Suite 300
Dallas, Texas 75242
Telephone:   (214) 659-8600
Facsimile:    (214) 659-8805

## CERTIFICATE OF CONFERENCE

I certify that, on October 31, 2012, I conferenced with Fain's attorney Thomas W. Mills, Jr. and Price's attorney William M. Ravkind and they are opposed to these motions.

s/ *Walt M. Junker*

Walt M. Junker
Assistant United States Attorney

## **CERTIFICATE OF SERVICE**

I hereby certify that on November 1, 2012, I electronically filed the foregoing document with the clerk of court for the United States District Court for the Northern District of Texas using the electronic case filing system. That system sent a "Notice of Electronic Filing" to the attorneys for the claimants.

s/ *Walt M. Junker*

Walt M. Junker
Assistant United States Attorney