IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| VS. | § | |
| | § | |
| $229,590.00 in United States Currency | § | |
| Seized from a Safe in the Home of | § | |
| Dallas County Commissioner | § | Civil Action No. 3:12-CV-0893-D |
| John Wiley Price | § | |
| | § | |
| $230,763.47 from Dallas County | § | |
| Commissioner John Wiley Price's | § | |
| Sale of 7001 Grady Niblo Road, | § | |
| Dallas, Texas | § | |
| | § | |
| Defendants *In Rem*. | § | |

MEMORANDUM OPINION
AND ORDER

In this civil forfeiture action, one claimant moves for leave to file an out-of-time answer to the forfeiture complaint and to reconsider the ruling denying him standing, the other claimant moves for an extension of time to respond to the government's special interrogatories, and the government moves to strike both claimants as litigants and for a default judgment. For the reasons that follow, the court grants the motion for leave to file an out-of-time answer, grants in part the motion for an extension of time to respond to the government's special interrogatories, and denies the government's motions to strike and for a default judgment and the claimant's motion to reconsider.

I

In 2011 the government seized the sum of $229,590 in United States currency from a safe located in the home of claimant Dallas County Commissioner John Wiley Price ("Commissioner Price").  After the Federal Bureau of Investigation ("FBI") published notice of the proposed non-judicial administrative forfeiture of the currency, Commissioner Price filed a verified claim of ownership of $115,000 of the defendant property.  Claimant Dapheny E. Fain ("Fain") filed a verified claim of ownership of the remaining balance of $114,590 of the defendant property.  After the claims were filed, the FBI ceased all administrative forfeiture proceedings concerning the seized currency and forwarded the claims to the United States Attorney's Office for judicial forfeiture proceedings.

In 2012 the government filed a complaint *in rem* against the seized property under the civil forfeiture statute, 18 U.S.C. § 981(a)(1)(A) and (C).  The government later amended the complaint to add as a defendant *in rem* the sum of $230,763.47 in United States currency seized from Commissioner Price's sale of 7001 Grady Niblo Road, Dallas, Texas.  Commissioner Price filed a verified claim of ownership of the sum of $115,000 of the $229,590 in currency seized from his home and of ownership of the sum of $230,763.47 seized from his sale of 7001 Grady Niblo Road, Dallas, Texas.[1]  Fain filed a verified claim of ownership of the remaining balance of $114,590 of the $229,590 in currency seized from

_____

[1]According to the government's first amended complaint for forfeiture *in rem*, $50,000 of this sum was initially seized in part from an individual and then re-seized from a title company, and $180,763.47 was seized from the title company.

- 2 -

Commissioner Price's home.

Commissioner Price and Fain both filed motions under 18 U.S.C. § 981(g)(2) to stay the proceedings due to the pendency of a related criminal investigation or case. Fain sought, in the alternative, an extension of time to file her answer. The court denied the motions to stay, concluding that neither Commissioner Price nor Fain had satisfied the requirement of standing under § 981(g)(2) because neither had filed an answer in this civil forfeiture proceeding. *United States v. $229,590.00 in United States Currency*, 2012 WL 4354814, at *1, 3 (N.D. Tex. Sept. 24, 2012) (Fitzwater, C.J.) ("*$229,590.00 I*"). It denied Fain's alternative motion for an extension of time to file her answer. *Id.* at *3. By agreement with the government, however, Fain filed a timely answer on October 15, 2012.

On October 11, 2012 Commissioner Price answered the government's first amended complaint for forfeiture *in rem* ("amended complaint") and filed the instant motions for leave to file his out-of-time answer and to reconsider the court's ruling denying him standing. On October 12, 2012 he again filed his answer to the government's amended complaint. On November 14, 2012 Fain filed the instant second motion to extend time to respond to interrogatories.[2] The government opposes Commissioner Price's motions and moves under Rule G(8)(c) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Supplemental Rules") to strike Commissioner Price and Fain as litigants and for the entry of a default judgment under Fed. R. Civ. P. 55.

---

[2]Fain also filed a motion for leave to file her motion for extension. The court grants Fain leave to file the motion.

II

The court first considers Commissioner Price's motion for leave to file an out-of-time answer.

A

Supp. R. G(5)(b) requires a claimant to "serve and file an answer to the complaint . . . within 21 days after filing the claim." The Supplemental Rules do not expressly authorize the court to extend the deadline for filing an answer to a forfeiture complaint. Supp. R. A(2) provides, however, that "[t]he Federal Rules of Civil Procedure also apply to the foregoing proceedings [which include forfeiture actions *in rem* arising from a federal statute] except to the extent that they are inconsistent with these Supplemental Rules." Under Rule 6(b)(1)(B)—which the government in its opposition response assumes applies—the court can extend a deadline "on motion made after the time has expired if the party failed to act because of excusable neglect."[3]

> Because Congress has provided no other guideposts for determining what sorts of neglect will be considered "excusable," [the Supreme Court has] conclude[d] that the determination is at bottom an equitable one, taking account of all relevant circumstances surrounding the party's omission. These include . . . the danger of prejudice to the debtor, the length of the delay and its potential impact on judicial proceedings, the reason for the delay, including whether it was within the reasonable control of the movant, and whether the movant acted in good faith.

---

[3]Rule 6(b)(2) provides that the court lacks authority to extend certain deadlines, but none of these deadlines applies here.

*Pioneer Inv. Servs. Co. v. Brunswick Assocs. Ltd. P'ship*, 507 U.S. 380, 395 (1993) (footnote omitted) (citing *In re Pioneer Inv. Servs. Co.,* 943 F.2d 673, 677 (6th Cir. 1991)); *see Silvercreek Mgmt., Inc. v. Banc of Am. Sec., LLC*, 534 F.3d 469, 472 (5th Cir. 2008) ("Under [*Pioneer Investment Services*], the court is to consider prejudice to the opposing party, length of the delay, and reason for the delay in determining whether the claimant's neglect was excusable and the delay was made in good faith.").

Commissioner Price largely complains that the government is misusing this civil forfeiture action in advance of bringing criminal charges, thereby jeopardizing his rights in a criminal prosecution, and that he should have been granted a stay. He does not argue excusable neglect as such. Commissioner Price does, however, make two assertions that bear on whether his failure to file a timely answer should be excused: he contends the government will not be prejudiced by his filing a late answer because the government already has sufficient notice of his claim and it has already seized the money; and he posits that he delayed in filing an answer because he reasonably believed the court should have granted a stay. The government posits several reasons for the court to find under the excusable neglect factors that Commissioner Price has failed to demonstrate excusable neglect.[4] In the end, in

---

[4]The government relies, in part, on a strict adherence standard. The government is correct that, in *United States v. Real Property Located at 14301 Gateway Boulevard West*, 123 F.3d 312, 313 (5th Cir. 1997) (per curiam), the Fifth Circuit noted that it had "required strict compliance with the provisions of . . . the rule that governs the filing of claims and answers in forfeiture suits." *Id.* (citing *United States v. $38,570 U.S. Currency*, 950 F.2d 1108, 1115 (5th Cir. 1992)). And in this court's prior decision in this case, the court quoted an opinion of the Eleventh Circuit that "emphasized that claimants must strictly adhere to the procedural requirements of the Supplemental Rules to achieve statutory standing to contest

this close case, and mindful of the equitable nature of the excusable neglect inquiry, the court finds that Commissioner Price should be permitted to file his answer out of time.

B

1

Under the first factor, the court considers the danger of prejudice to the government, and finds it to be slight. This is not a case in which an unknown, unanticipated claimant has come out of the woodwork after the time for filing claims and answers has elapsed, thereby disrupting the normal course and progress of the proceedings. The government was well aware before it filed suit that Commissioner Price was a potential claimant. The currency at issue in the complaint was seized from a safe located in Commissioner Price's home. In the complaint, the government alleged that in, August 2011, Commissioner Price and his attorney had been given direct notice of an administrative forfeiture, Compl. ¶ 9, and that on September 27, 2011 Commissioner Price had filed a verified claim of ownership to $115,000 of the currency, i.e., the same portion he is now attempting to claim, *id.* at ¶ 10. In fact, the complaint details extensive contacts between the government and Commissioner Price and

---

a forfeiture action," and that held that "[t]he district court was entitled to insist upon strict compliance with the procedural requirements set forth in Rule G(5)[.]" *$229,590.00 I*, 2012 WL 4354814, at *2-3 (quoting *United States v. $12,126.00 in U.S. Currency*, 337 Fed. Appx. 818, 820 (11th Cir. 2009) (per curiam)). In neither *$38,570 U.S. Currency* nor *$229,590.00 I*, however, did the Fifth Circuit or this court suggest that granting an extension under Rule 6(b)(1)(B) based on excusable neglect is incongruous with a strict application of Rule G. In fact, by insisting on a showing of excusable neglect before permitting a claimant to file an out-of-time answer, rather than allowing a late answer for any reason or even for cause, the court essentially strictly applies Rule G(5)(b).

Fain concerning the filing of the instant forfeiture case. *See id.* at ¶¶ 13-17. The government was therefore well aware before it even filed this forfeiture action that Commissioner Price was a likely claimant, and of the exact amount he would claim from the currency seized from the safe in his home. On May 29, 2012 the government filed its amended complaint, which added the sum of $230,763.47 seized from Commissioner Price's sale of 7001 Grady Niblo Road, Dallas, Texas. When the case was unsealed on May 31, 2012, the government served Commissioner Price and his attorney the same day. Commissioner Price filed a verified claim on July 5, 2012. On July 25, 2012 he filed the motion to stay that the court denied in *$229,590.00 I*. In sum, the government knew prior to filing this civil forfeiture action that Commissioner Price was a likely claimant to the seized currency, and it in many respects treated him as such.

The government maintains that it has been prejudiced because Commissioner Price has increased the length and cost of litigation by intentionally refusing to file a timely answer. It posits that, had he followed the procedural rules and filed valid, timely claims and answers demonstrating standing, the government could have consented to a stay; instead, he filed vague, deficient claims and unsupported motions, thereby tying up government counsel in needless civil litigation, taking time from an important parallel criminal investigation, and requiring that the government draw attorneys from other cases to maintain the pace of the criminal investigation.

The government also contends that, even if the court accepts Commissioner Price's conclusory assertion that the government has not been prejudiced because it is aware of his

claim, he cannot rely on an absence of harm to excuse a strategic choice not to timely file an answer.  Citing Fifth Circuit authority, it maintains that the excusable component of the excusable neglect standard would be eliminated if inexcusable neglect could become excusable neglect by a mere absence of harm.

Regarding the government's first argument, the court finds that the prejudice to the government is slight.  Instead of filing an answer on July 26, 2012 (i.e., 21 days after he filed his verified claim, *see* Rule G(5)(b)), he filed his answer on October 11, 2012.  In the scheme of a civil lawsuit, this presents, at worst, a modest increase in the length of the litigation.  And given the grounds for Commissioner Price's motion to stay and the reasons for his decision not to file an answer, it is difficult to conclude that he actually burdened the government to the extent alleged.

As for the government's second argument, the court agrees that the mere absence of prejudice cannot alone support a finding of excusable neglect.  Here, however, the court is relying on more than consideration of the prejudice factor to find that Commissioner Price has demonstrated excusable neglect.

2

Under the second factor, the court assesses the length of the delay and its potential impact on the judicial proceedings.  As explained above, in the context of a civil case, the delay from July 26 to October 11, 2012 is modest, and the potential impact of the delay on this case is correspondingly negligible.

The government posits that allowing a filing well after the forfeiture notice was given

- 8 -

and the answer deadline expired would adversely impact the government by allowing the reopening of numerous forfeitures by similarly-situated late claimants.  It contends that permitting claimants to ignore the rules and gamble on favorable rulings, without having to bear the procedural consequences, harms the government and judicial economy, and that a ruling in favor of Commissioner Price will encourage others to try the same tactic.

The court is not persuaded by the government's concerns that a decision favoring Commissioner Price will widely and adversely impact the government in other civil forfeiture cases, or that this ruling will necessarily reach farther than the facts of this case.  First, because each future case will involve the court's evaluation of the equitable concept of "excusable neglect" based on considerations of several non-exclusive factors as they apply to the facts of that individual case, it is difficult to generalize about the potential impact of the court's decision in this case.

Second, this case is somewhat exceptional in that this civil forfeiture action is being litigated ahead of, rather than as part of or as a corollary to, a criminal prosecution.[5]  It is apparent from the filings in this case that Commissioner Price's litigation decisions have likely been driven more by concerns for how they will impact a forthcoming criminal prosecution than by how they might impact this civil action.  *See, e.g.*, Price Mot. Leave 3-4 (stating that his concerns go beyond the Fifth Amendment and "have to do with the

---

[5]The government alleges in the complaint and amended complaint that the cash seized from Commissioner Price's safe "is also being held as evidence in a parallel criminal investigation."  Compl. at 2 n.1; Am. Compl. at 2 n.1.

government's attempt to change the procedural landscape[,] . . . [which] will allow the prosecution to obtain a blueprint of [his] case pre-indictment and well beyond the federal rules."). The case therefore has distinguishing features that should readily deter potential claimants in other cases from attempting to rely on it.

3

The court now considers the third factor, under which it evaluates the reason for the delay. Of the nonexclusive factors, this one is "perhaps the most important single factor." *Inst. for Policy Studies v. U.S. Cent. Intelligence Agency*, 246 F.R.D. 380, 383 (D.D.C. 2007) (internal quotation marks and citations omitted) (finding no excusable neglect where other three factors favored the movant, but the third factor weighed against the movant); *see also Dimmit v. Ockenfels*, 407 F.3d 21, 24 (1st Cir. 2005) ("[A]mong the factors enumerated in *Pioneer*, by far the most critical is the asserted reason for the mistake.").

In support of this factor, Commissioner Price offers in his motion a single sentence: "the reason for delay is bottomed upon the Commissioner's reasonable belief that he should have been granted a stay." Price Mot. Leave 4. The government responds that the excuse that Commissioner Price was acting based on a reasonable belief is insufficient given the following: his intentional and strategic decision not to file an answer or to seek an extension of time; the detailed discussions between government counsel and his attorney that preceded this decision, in which government counsel addressed the adverse ramifications of such a course of conduct; and his failure to present any authority that indicated that a motion to stay would be successful (and his reliance on a court opinion that was contrary to his position).

The government maintains that Commissioner Price consciously chose to pursue a different avenue and that his failure to evaluate carefully the legal consequences of his chosen course provides no basis for relief. It contends that, even if he thought that his belief was reasonable, he did not act in good faith by intentionally opting not to answer and not to seek an extension of the answer deadline.

This factor—perhaps the single most important—makes this motion a close call. On the one hand, there is no question that Commissioner Price made an intentional, strategic decision not to answer the amended complaint and instead to file a motion to stay. He should have known that he could not obtain a stay without standing, and that he would not have standing without filing an answer, as the court held in *$229,590.00 I*, 2012 WL 4354814, at *2-3. He could not reasonably have believed otherwise. The government has identified the procedural route he should have taken. *See* Gov't Resp. 10 ("Here, Price should have sought an extension on his answer to permit sufficient time for the Court to rule on his motion to stay before his answer was due."). And the fact that he probably acted on the basis of his counsel's advice is of no moment. *See Pioneer*, 507 U.S. at 396-97 (holding that client is held responsible for acts of his counsel).

But on the other hand, the reason Commissioner Price sought a stay rather than file an answer is apparent from the record. As the government acknowledges,[6] Commissioner Price's counsel was attempting to protect his client's rights, including his Fifth Amendment

---

[6]*See* Gov't Resp. 9 (referring to Commissioner Price's "insistence that the proceedings interfere with his Fifth Amendment protections.").

rights, in relation to a potential criminal prosecution. *See, e.g.,* Price Mot. Leave 3 (stating that "[h]is concern *is not only* bottomed upon Fifth Amendment concerns, although those concerns are obvious[, but] [h]is concern also is bottomed upon the government's very clever use of the civil forfeiture case to prepare its anticipated criminal case (which goes back fifteen to twenty years)." (emphasis in original)); Price Resp. 2 (stating that "[d]espite the fact that this forfeiture case against Claimant Price is nothing more than a sham or a ruse and its only purpose is to obtain civil discovery for a criminal investigation, still, Claimant Price will respond to the Government's combined motions . . . based upon the facts and the law."). As noted above, this case is somewhat exceptional because the civil forfeiture action has preceded the potential criminal prosecution.  Although nothing in the law prevents this sequence, it casts the actions of defense counsel in a more reasonable light.  The decision not to answer, and instead to move for a stay, while intentional and strategic, was probably undertaken by counsel in an effort to navigate the potentially rocky shoals between Commissioner Price's interests in the civil forfeiture action and his even greater interests in a potential criminal prosecution.

On the third factor, although it is a close call, the court finds that the reason for the delay supports granting Commissioner Price's motion.

4

The fourth factor requires that the court consider whether Commissioner Price acted in good faith.  Commissioner Price does not explicitly address this factor, although he implicitly contends he acted in good faith because he reasonably believed he should have

been granted a stay.  As explained above, the government argues for several reasons that Commissioner Price could not have acted in good faith.

The court concludes, essentially for the reasons explained *supra* at § II(B)(3), that Commissioner Price acted in a good faith attempt to seek a stay in this case that, if granted, would have addressed his concerns about compromising his rights in relation to a potential criminal prosecution.

5

"[E]xcusable neglect is an equitable concept that necessarily takes account of all relevant circumstances[.]"  *Friedman & Feiger, L.L.P. v. ULofts Lubbock, LLC*, 2009 WL 3378401, at *2 (N.D. Tex. Oct. 19, 2009) (Fitzwater, C.J.).  In this case, Commissioner Price made a deliberate, strategic decision not to answer and instead to move for a stay without also moving for an extension of time to answer.  This was a mistaken approach.  But his answering on October 11, 2012 rather than July 26, 2012 has resulted in only slight prejudice to the government and a modest delay that has a negligible potential impact in the case. Commissioner Price had good reasons for seeking a stay rather than filing an answer due to concerns about compromising rights related to a potential criminal prosecution.  And he acted in good faith.  In this close case, and considering the equitable nature of the excusable neglect inquiry, the court finds that Commissioner Price has made the necessary showing to warrant granting his motion for leave to file an out-of-time answer.

III

Commissioner Price asks the court to reconsider its decision denying him standing. To the extent Commissioner Price is asking the court to reconsider its decision in *$229,590.00 I*, in which the court held that he lacked standing, the court denies the motion.

Because the court's decision to deny Commissioner Price a stay did not result in a final judgment, Rule 54(b) governs whether the court should reconsider its ruling.  *See Dos Santos v. Bell Helicopter Textron, Inc. Dist.*, 651 F.Supp.2d 550, 553 (N.D. Tex. 2009) (Means, J.).  The court "possesses the inherent procedural power to reconsider, rescind, or modify an interlocutory order for cause seen by it to be sufficient." *Colli v. S. Methodist Univ.*, 2011 WL 3524403, at *1 (N.D. Tex. Feb. 14, 2011) (Solis, J.) (internal quotation marks omitted) (quoting *Melancon v. Texaco, Inc.*, 659 F.2d 551, 553 (5th Cir. 1981)). "Such a motion requires the court to determine 'whether reconsideration is necessary under the relevant circumstances.'" *Brown v. Wichita Cnty., Tex.*, 2011 WL 1562567, at *2 (N.D. Tex. Apr. 26, 2011 (O'Connor, J.) (quoting *Judicial Watch v. Dep't of the Army*, 446 F.Supp.2d 112, 123 (D.D.C. 2006)).  The decision "whether to grant such a motion rests within the discretion of the court." *Colli*, 2011 WL 3524403, at *1 (citation omitted).

The court concludes that its decision in *$229,590.00 I* was correct.  Accordingly, the motion to reconsider is denied.

Insofar as Commissioner Price is asking that the court reconsider its decision in *$229,590.00 I* now that he has been permitted to file an out-of-time answer, the court also denies the motion.  That Commissioner Price has now answered does not change the

fundamental fact that, when the court decided *$229,590.00 I*, he had not answered, and therefore lacked standing.  *See $229,590.00 I*, 2012 WL 4354814, at *3.  This denial of his motion to reconsider does not, however, preclude him from moving again for a stay now that he has answered.

IV

The government moves under Supp. R. G(8)(c)(i) to strike Commissioner Price and Fain as litigants for lack of standing and issue a default judgment forfeiting the defendant property to the United States.

A

The government contends that Commissioner Price should be stricken as a litigant because (1) his claim fails to identify the specific cash from the safe that he is seeking to claim, in violation of Rule G(5)(a)(i)(A); (2) he failed to file a timely answer, in violation of Rule G(5)(b);[7] and (3) he failed to serve timely answers or objections to the government's special interrogatories, in violation of Rule G(6)(b).  The government moves to strike Fain as a litigant on these grounds: (1) her claim fails to identify the specific cash from the safe that she is seeking to claim, in violation of Rule G(5)(a)(i)(A); (2) her claim fails to state her property interest in these proceedings, in violation of Rule G(5)(a)(i)(B); and (3) her claim fails to provide the minimal facts necessary to show that she meets the definition of "owner" in 18 U.S.C. § 983(d)(6), and the few facts in her claim and statements of her legally

---

[7]Considering the court's decision to permit Commissioner Price to file an out-of-time answer, the court need not address this ground.

authorized representative establish that she is an unsecured creditor or nominee who, by law, is barred from these proceedings.

Supp. R. G(8)(c)(i)(B) provides that, "[a]t any time before trial, the government may move to strike a claim or answer . . . because the claimant lacks standing."  The government's motion to strike a claim or answer "may be presented as a motion for judgment on the pleadings or as a motion to determine after a hearing or by summary judgment whether the claimant can carry the burden of establishing standing by a preponderance of the evidence."  Supp. R. G(8)(c)(ii)(B).  The government is not requesting a hearing.  *See* Gov't Resp. 24 ("Because the Government believes that these matters may be decided on motion practice, it is not requesting a hearing.")  It is not moving for summary judgment.[8]  And it is otherwise apparent that the government is moving for judgment on the pleadings, i.e., the third alternative under Supp. R. G(8)(c)(ii)(B).  *See, e.g.*, *id.* at 16 (asserting that "Both Price's and Fain's claims fail to specify the specific property they are claiming from the safe and Fain's claim fails to state her interest in the property.").  In a civil forfeiture action, the court can dismiss a claim based on a motion for judgment on the pleadings if the "claim fails on its face to show facts that support claim standing."  Supp. R. G(8) advisory committee's note.

---

[8]The government does not mention summary judgment in its motion.  And "[t]he court cannot grant summary judgment on a ground concerning which the nonmovant lacks adequate notice."  *Wyman v. City of Dall.*, 2004 WL 2100257, at *10 n.20 (N.D. Tex. 2004) (Fitzwater, J.) (citing *John Deere Co. v. Am. Nat'l Bank, Stafford*, 809 F.2d 1190, 1192 (5th Cir. 1987)).

B

The government argues that the claims of Commissioner Price and Fain should be stricken for failing to comply with Rule G(5)(a)(i)(A) and (B), which mandate, respectively, that a claim identify the specific property claimed and identify the claimant and state the claimant's interest in the property.  The government posits that both claims fail to specify the specific property being claimed from the safe, and that Fain's claim fails to state her interest in the property.

The government argues that it carefully described in detail in its complaint the groupings of money seized from the safe so that Commissioner Price and Fain could specify the exact money they are claiming; that, to have standing, Commissioner Price and Fain cannot in this *in rem* action simply specify an amount of money they are seeking, but must specify the exact groupings of cash they are seeking to claim from the safe; they must explain which money belongs to whom, or how they arrived at the split between themselves; and each claim merely asserts ownership of a sum of money without identifying exactly which bills constitute these sums, and the claims appear to be arbitrary.

Regarding Fain's claim, the government cites a statement made by Fain's counsel that she did not have a ledger reflecting cash transactions in and out of the safe.  It contends that her answer confirms that she did not have an accounting of the money in the safe and did not know the safe's combination; that Commissioner Price also confirmed that he did not account for or track the currency that he purportedly placed in the safe for Fain; that her claim appears to be nothing more than an undocumented and unsecured "I owe you" for money she

gave Commissioner Price that was commingled with other money in the safe; that Fain is only claiming an unsecured sum of money, not any specific property, and therefore is only an unsecured creditor of Commissioner Price; and that she lacks standing because the standing of unsecured creditors is barred by 18 U.S.C. § 983(d)(6)(B)(i).  The government contends that Fain's failure to identify the specific property she is claiming is also amplified by her failure to comply with Rule G(5)(a)(i)(B) because, despite allegations in the complaint that Fain is merely a straw owner or a nominee, she offers nothing more than a bare-bones claim that the sum of $114,590 is her personal property.  The government posits that Fain does not specify what "right" she has to the property or directly claim an ownership interest in it, and, despite her obligation under Rule G(5) to prove her standing, she has left the court to guess whether she may be an unsecured creditor or a nominee owner whose standing is barred by 18 U.S.C. § 983(d)(6).

The government maintains that Commissioner Price's claim violates Rule G(5)(a)(i) in the same way that Fain's does because he does not identify the specific property he is claiming from the safe.  It cites his administrative claim in which he originally claimed all of the cash in the safe—one-half as his own as an owner, and one-half as a custodian or "bailee" for Fain.  The government contends that, had Commissioner Price continued to claim that he was a bailee of Fain's money, he would have had to have stated a colorable, legitimate interest in specific groups of money that he stored for Fain, identify Fain as the bailor, and state his authority to file a claim as a bailee.  It posits that Commissioner Price apparently recognized this before filing his civil claim, because he dropped his sworn

statement that he was the custodian of funds for Fain.  Even so, the government contends, this does not enable Fain or Commissioner Price to evade the directives in Rule G(5)(A)(iii) and 18 U.S.C. § 983(d)(6)(B)(ii), and they must give some explanation of their relationship to the money and how their claims should be divided, or they lack standing to contest the forfeiture of the money in the safe.  The government concludes that, because Commissioner Price bears the burden of proving his standing to claim the money in the safe, and because he has not done so, the court should strike his claim.

Fain responds that, in her claim, she identified the property claimed with specificity to the extent possible, and that the sum of $114,590 of the $229,590 seized cash was her own personal property.  She argues, in pertinent part, that her claim does not amount to an unsecured "I owe you" because

> she quite clearly claimed that it was her cash she asked Price to hold for her.  Price was not free to spend the cash; his sole duty was to possess Fain's money for Fain's later use.  Fain did not have a future interest in the money, or a contingent interest, it was simply her money.  In other words, Fain is the owner and Price was the possessor.

Fain Resp. 2.  She maintains that she claims to be the owner of $114, 590, not a general creditor.

Commissioner Price responds that he has repeatedly stated the amount of the money in the safe that was his as opposed to Fain's.  And he argues that, because currency is fungible, and due to the passage of time, "it is essentially impossible to identify the serial number on each bill that was in his possession before the Government unlawfully took it."

- 19 -

Price Resp. 3.

C

The court turns first to the government's motion to strike Commissioner Price and Fain as claimants under Supp. R. G(8)(c)(i)(A) on the basis that they have failed to identify the specific property (i.e., the specific cash) they are claiming.

Supp. R. G(5)(a)(i) enables a person who asserts an interest in defendant property in an *in rem* forfeiture action to contest the forfeiture by filing a claim in the court where the action is pending. Supp. R. G(5)(a)(i); *see also* 18 U.S.C. § 983(a)(4). To state a valid claim, the claim must, *inter alia*, identify the specific property claimed. Supp. R. G(5)(a)(i)(A).

Commissioner Price and Fain have identified their respective interests in the seized cash (Commissioner Price as owner of $115,000 and Fain as owner of $114,590). As to the requirement of Supp. R. G(5)(a)(i)(A) that a claim must "identify the specific property claimed," the government has cited no authority, and the court has found none, that holds that a claimant to a portion of seized currency must provide the kind of detail that the government seeks. The point of Supp. R. G(5)(a)(i)(A) is to require a claimant to identify the specific property claimed so that the government and all other claimants will know what property the claimant is claiming. And at least in a case like this one—where two claimants are making complementary, not competing, claims to currency seized from one location—there would appear to be no statutory or rule-based purpose for requiring greater detail. Moreover, if Supp. R. G(5)(a)(i)(A) did require this degree of detail in a currency case, a property owner

could forfeit his or her rights because of currency commingling over which the owner had no control.

Accordingly, the court declines to strike Commissioner Price's or Fain's claim under Supp. R. G(8)(c)(i)(A) for failing to identify the specific property claimed.

D

The government also moves to strike Fain as a litigant on the grounds that her claim fails to state her property interest in these proceedings, in violation of Rule G(5)(a)(i)(B), and her claim fails to provide the minimal facts necessary to show that she meets the definition of "owner" in 18 U.S.C. § 983(d)(6).

"[O]nly 'owners' have standing to contest a forfeiture," but the term "owner" should be broadly construed "to include any person with a recognizable legal or equitable interest in the property seized." *United States v. $38,570 U.S. Currency*, 950 F.2d 1108, 1111-12 & n.4 (5th Cir. 1992) (some quotation marks and citations omitted). Because the government is moving for judgment on the pleadings, the court can dismiss the claim of Fain for lack of standing if the "claim fails on its face to show facts that support claim standing." Supp. R. G(8) advisory committee's note. Depending on the nature of the seized property and of the legal or equitable interest claimed, very little may be required to *plead* standing. *See, e.g., United States v. All Assets Held at Bank Julius Baer & Co.*, 772 F.Supp.2d 191, 198 (D.D.C. 2011) ("In the preliminary stages of a forfeiture action, a claimant must establish standing by pleading 'a colorable interest in the property, for example, by [alleging] actual possession, control, title, or financial stake.'" (brackets in original) (quoting *United States v. 475 Martin*

*Lane*, 545 F.3d 1134, 1140 (9th Cir. 2008))).   And although in some instances it may be apparent from the claim alone that the claimant lacks standing,[9] in others it may be necessary to challenge standing factually, at a hearing or by summary judgment motion, which are the other two procedures contemplated by Supp. R. G(8)(c)(ii)(B).

Commissioner Price and Fain each claim to be an "owner" of a portion of the $229,590 seized from the safe located in the home of Commissioner Price.   As noted, their claims are complementary, not competing, and together they claim the entire sum seized from the safe.   Commissioner Price alleges that he is the owner of $115,000 of the seized funds, Price Claim ¶ 1, and he asserts in his affidavit a "right" to these funds, *id.* at Exh. 1.   Fain alleges that she is the owner of the remaining $114,590, asserting in her verified claim that "[t]he $114,590 is [her] personal property and was being held by Price solely for safekeeping."   Fain Claim ¶ 2.

Because Fain alleges that she is the owner of the balance of $114,590 in seized currency, she has sufficiently pleaded her ownership interest in the property.   Accordingly, to the extent the government moves to strike her as a litigant pursuant to Supp. R. G(8)(c)(i)(B) based on a lack of standing, the court denies the motion.[10]

---

[9]For example, a claimant may plead facts that establish that he is an unsecured creditor.   "'[T]he federal courts have consistently held that unsecured creditors do not have standing to challenge the civil forfeiture of their debtors' property.'"   *United States v. One-Sixth Share*, 326 F.3d 36, 44 (1st Cir. 2003) (quoting *United States v. $20,193.39*, 16 F.3d 344, 346 (9th Cir. 1994)).

[10]Nothing prevents the government from challenging Fain's assertion of ownership by summary judgment motion or at trial.

E

The government also moves to strike Commissioner Price under Supp. R. G(8)(c)(i)(A) on the basis that he failed to timely respond to the government's special interrogatories, in violation of Supp. R. G(6)(b). Commissioner Price argues in response to the motion that "[t]he Government also admits that Claimant Price has served responses to the Government's special interrogatories." Price Resp. 2-3. The government does not dispute this statement in its reply, and it advances no further argument for striking Commissioner Price based on an alleged failure to respond to the special interrogatories.[11] Accordingly, the court denies the government's motion to strike Commissioner Price as a litigant on this basis.

V

Because the court is denying the government's motion to strike Commissioner Price and Fain as litigants under Supp. R. G(8)(c)(i), it also denies the government's motion for

---

[11]In it reply, the government asserts:

> Contrary to Price's claims, the Government does not concede that Price has filed a valid answer or responses to the Government's special interrogatories. Rather, the Government opposes Price's efforts to file a late answer, and it reserves the right to file a motion to compel Price to provide more definite answers to the special interrogatories in the event that the Government's motions to strike and grant a default judgment are not granted.

Gov't Reply to Price Resp. 7 n.5. The court assumes that the dispute over special interrogatories is, if anything, a discovery dispute rather than a basis for striking Commissioner Price as a claimant.

a default judgment.

## VI

Fain has filed a second motion to extend time to respond to interrogatories, in which she requests a 90-day extension of time to respond to the government's special interrogatories. Fain posits that, because the government moved for a default judgment, she believed her obligation to respond to the special interrogatories "w[as] on hold." Fain Mot. 3. She asks the court to postpone the deadline for responding given the government's pending motion for a default judgment. According to her motion, the government opposes her motion but, due to the pending default judgment motion, does not intend to compel her to answer the interrogatories.

Having denied the government's motions to strike and for a default judgment, the court concludes that Fain should be given a reasonable period to respond to the special interrogatories. Given the interval between the date she filed the motion and today, and absent any apparent need for more than the usual time to respond to interrogatories, *see* Rule 33(b)(2), the court grants her motion in part to the extent of allowing her 30 days from the date of this memorandum opinion and order to respond to the special interrogatories.

\* \* \*

Accordingly, the court grants Commissioner Price's October 11, 2012 motion for leave to file his out-of-time answer, denies his October 11, 2012 motion to reconsider the court's ruling denying him standing, denies the government's November 1, 2012 motion to strike Commissioner Price and Fain as litigants, denies the government's November 1, 2012

- 24 -

motion for a default judgment, grants Fain's November 14, 2012 motion for leave to file

motion for extension 1 day out of time, and grants in part Fain's November 14, 2012 second

motion to extend time to respond to interrogatories.

**SO ORDERED.**

February 20, 2013.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE